# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS MANUEL BERMUDEZ, | : | CASE NO. 3:13-cv-00156-CCC-GBC |
| | : | |
| Plaintiff, | : | (CHIEF JUDGE CONNER) |
| | : | |
| v. | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| CAROLYN W. COLVIN, | : | REPORT AND RECOMMENDATION TO |
| ACTING COMMISSIONER OF | : | DENY PLAINTIFF'S APPEAL |
| SOCIAL SECURITY, | : | |
| | : | Docs. 11,13,14,15 |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. Procedural History

On December 4, 2009, Carlos Manuel Bermudez ("Plaintiff") protectively filed an application for Title II Social Security Disability benefits ("DIB"), and an application for Title XVI application for Supplemental Security Income ("SSI"), with a later amended onset date of September 6, 2009. (Tr. 9).

This application was denied, and on March 28, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff was represented by counsel. (Tr. 9). Plaintiff and

a vocational expert testified. On June 10, 2011, the ALJ issued a decision finding that Plaintiff was not entitled to DIB or SSI because Plaintiff could perform a limited range of light work with a sit / stand option (Tr. 6-18). On December 13, 2012, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-3).

On January 23, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3), to appeal the decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1.

On May 17, 2013, Commissioner filed an answer and administrative transcript of proceedings. Docs. 10,11. In July and August 2013, the parties filed briefs in support. Docs. 13,14,15. On April 30, 2014, the Court referred this case to the undersigned Magistrate Judge. On June 12, 2014, Plaintiff notified the Court that the matter is ready for review. Doc. 17.

## II.    Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be

less than a preponderance. <u>Jones</u>, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background

Plaintiff was 53 years old at the time of the ALJ's decision (Tr. 18, 39, 190). He obtained his GED in 1991 (Tr. 62). Plaintiff's past work was as an office machine server, offset print operator, fork lift operator, delivery / merchandise, and cleaner / industrial (Tr. 16, 55). He can maintain his personal care needs, but obtains help from his wife to clip his toenails and care for his feet (Tr. 64).

He can wash dishes and take trash to just outside the front door (Tr. 66). To enter and exit his apartment, Plaintiff must walk up and down twelve steps (Tr. 41). Plaintiff testified at hearing that he does not feel pain in his feet (Tr. 45). He further testified that he has had a burning sensation in his feet since 2007 and has trouble feeling the ground when he walks (Tr. 62, 72-73). Plaintiff tries to take walks (Tr. 76-77). He testified at hearing that he did not drive due to neuropathy in his feet (Tr. 62). However, he submitted a function report as part of his disability filings where he admitted that he sometimes borrowed his daughter's car to attend doctors' appointments and pick up his wife from work (Tr. 229-30). Plaintiff also reported that he took his daughter's dog for walks and served him food and water (Tr. 231). He further reported sometimes making sandwiches and complete meals (Tr. 232).

### B. Relevant Medical Evidence[1]

#### 1. Medical Evidence Relevant to Neuropathy in Plaintiff's Feet

Plaintiff obtained treatment for an eschar callus in his left foot in September 2009 (Tr. 287-89, 384). Although Plaintiff denied any pain from the callus, Junia Tiruchelvam, M.D., recommended he not work because he was required to stand for about twelve hours during his work shifts (Tr. 289). Dr. Tiruchelvam removed the callus on September 14, 2009, and noted no evidence of infection or ulceration (Tr. 289). During a physical examination later that month, podiatrist David Granger, D.P.M., observed that Plaintiff had a normal base and angle of gait, his stance was stable without ataxia, and opined that Plaintiff could walk as tolerated with a surgical shoe (Tr. 335-36). Dr. Granger diagnosed Plaintiff with diabetes with neuropathy, lateral foot wound and peripheral

---

[1] Plaintiff limited the issues on appeal to medical history related to neuropathy in Plaintiff's feet. Thus, the Court omits other medical evidence in the relevant facts section.

vascular disorder (PVD) (Tr. 335).

In October 2009, the eschar recurred on Plaintiff's left foot and he sought treatment with a surgeon to resolve it (Tr. 290, 333). An October 13, 2009 arterial study of Plaintiff's lower legs revealed non-compressible blood vessels, normal pulse volume, and normal ABI (ankle-brachial index) levels on both sides at that time, with decreased great toe indices on the left side (Tr. 302, 341). In other words, Plaintiff did not have PVD.

In November 2009, Plaintiff consulted with Sandra Fortna, M.D., who opined that Plaintiff had foot cellulitis and a diabetic ulcer on his left foot; she recommended debridement and antibiotic treatment (Tr. 303, 306). November 13, 2009 x-rays confirmed the ulcer (Tr. 314). Plaintiff underwent a surgical procedure on November 17, 2009 that removed the ulcer (Tr. 319-20, 327-28). By January 2010, Dr. Granger assessed Plaintiff's foot wound as healed and commended Plaintiff on "taking good care of his foot" (Tr. 324). Dr. Granger noted under "work activity" "ambulation as tolerated" (Tr. 324). Plaintiff testified that his foot had healed "pretty well" by the end of January 2010 (Tr. 53). Dr. Granger noted in March 2010 "complete healing" of Plaintiff's left foot ulceration, commenting "[p]atient is doing well at this point. He will continue with his diabetic shoes and daily inspection" (Tr. 365). Plaintiff testified that despite his foot healing, he did not return to work after March 2010 due to other conditions, namely his diabetes and back pain (Tr. 54).

Aruna Chelliah, M.D., opined in October 2010 that Plaintiff had poor glycemic control, eating irregularly and with poor habits (Tr. 371-72). Dr. Chelliah referred Plaintiff to diabetic education classes and advised him on diet and foot care (Tr. 372). She advised him not to walk barefoot and to get a shoe with the front reinforced to protect his toes (Tr. 372). Her physical examination revealed that Plaintiff had normal pulses in his extremities, no pedal edema, no chronic

skin changes, but absent touch sensation, vibration sense, and position sense (Tr. 375). She also found that Plaintiff had left foot deformity due to surgery, but no ulceration, abrasion, or onychomycosis (fungal infection) (Tr. 375).

Tammy Miller, M.D., examined Plaintiff in September 2010. During this examination, Dr. Miller found that Plaintiff moved his lower extremities equally and at full strength (5/5), and could ambulate independently (Tr. 394). Similarly, in November 2010, Shelly J. Levenstein, CRNP, observed that Plaintiff was ambulatory without assistance, and had no new rashes or lesions on his skin (Tr. 386).

## IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant

satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.      Plaintiff Allegations of Error

### 1.      ALJ Determination of Severe Impairments

Plaintiff first argues the ALJ erred in failing to find diabetic neuropathy in Plaintiff's feet as a severe impairment. Pl. Br. at 5, Doc. 14. The ALJ evaluated the record to determine whether neuropathy in Plaintiff's feet met the criteria for a severe impairment.

### a. ALJ Review and Findings

"The claimant has the following severe impairments: Lumbar Degenerative Disc Disease and Obesity." (Tr. 11).

"The above impairments are severe in that they significantly restrict the claimant from performing some work related activities. These impairments will be discussed further below. Regarding the claimant's obesity, the claimant's height is 69 inches and his weight is 283 pounds." (Tr. 11).

"The claimant has medically determinable impairments of diabetes mellitus, chronic kidney disease, stage III and benign essential hypertension, which the [ALJ] does not find to be severe impairments as they do not cause more than a minimal limitation in the claimant's ability to perform work related activities." (Tr. 11).

"The York Hospital record in November 2009 reflected that the claimant had diabetes mellitus that was poorly controlled since the claimant was on and off his medications. The claimant

admitted that he was not able to be compliant with medications including insulin. The claimant was seen by Aruna Chelliah, M.D. in October 2010. The progress notes indicated that the claimant has irregular dietary habits and he needs to be more disciplined with meal timings and taking insulin. He was referred to diabetes education classes and advised to exercise and diet. The claimant was seen at the York Hospital Nephrology Clinic in November 2010 and they noted that his diabetes is controlled. While the claimant's diabetes mellitus is a medically determinable impairment, there is no evidence in the medical treatment records which would support a finding that this impairment has had more than a minimal affect on his activities of daily living or on his ability to perform work." (Tr. 12) (emphasis added).

"The claimant alleges disability due to a left foot ulceration. The medical treatment records indicate that the claimant was first diagnosed with a September 14, 2009 callus formation which did not evidence infection on ulceration. On September 23, 2009, the claimant was diagnosed with an ulcer on his left foot and a subsequent wound proximal posterior to it was observed November 12, 2009. The claimant received ongoing treatment for both through December 16, 2009. On January 20, 2010, David Granger, DPM examined the claimant's left foot and reported that the foot was completely healed and showed no swelling or cellulitis, indicative of a healed left diabetic foot wound. (Tr. 12) (emphasis added).

"[T]he claimant alleges sensory neuropathy but there is no evidence of record establishing the existence of peripheral or sensory neuropathy. The claimant had a bilateral lower extremity non-invasive arterial study October 13, 2009, which revealed non-compressible vessels with what appear to be normal ABI's bilaterally, ruling out peripheral vascular disease." (Tr. 12) (emphasis added).

"The claimant was diagnosed with chronic kidney disease state III. The [ALJ] finds that the

12 month durational requirement has not been met and, as such, the claimant's kidney disease is not a severe impairment. Additionally, there is no evidence in the medical treatment records which would support a finding that this impairment has had more than a minimal affect on his activities of daily living or on his ability to perform work. (Tr. 12) (emphasis added).

"The claimant alleged disability due to uncontrolled diabetes. He reports neuropathy in both legs and feet, kidney problems, hypertension, and a diabetic foot ulcer. The claimant further alleged that he walks on crutches as a result of his leg and foot problems. He did note on his function report that he walks his daughter's dog, watches his grandchildren's sporting events and uses the computer. The claimant is able to maintain his personal care needs. He states that he is somewhat limited in household chores but is able to prepare basic meals, shop and socialize. He reports sleeping with a pillow under his feet. The claimant reported that his impairments limit his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs and use his hands. The claimant further alleges pain in his feet, back and hands. (Tr. 14).

"At the hearing, the claimant amended his onset date to September 6, 2009. He testified that he stopped working as he had a foot ulcer which had to be treated since he was unable to put his shoes on. The claimant alleged that the duration of his foot problem was from September 2009 to January 2010. He was unable to return to work because of several issues. He lost his job. He had problems with the discs in his back, which resulted in pain. The pressure was constant and made it difficult to stand. The claimant discussed the limitations from his diabetes, neuropathy and kidney treatment. The claimant stays home during the day and watches TV and uses the computer. He can do some basic household chores and cook." (Tr. 14).

"As for opinion evidence, Dr. Tiruchelvam noted in her progress notes in September and

October 2009 that the claimant cannot work due to pain, particularly in his foot. The [ALJ] gives limited weight to Dr. Tiruchelvam's assessment to the extent that such is interpreted as an assessment of the claimant's abilities beyond that time period but does concede that the claimant may have been temporarily incapacitated for a short duration due to the foot ulcer. Dr. Tiruchelvam's assessment is not that the claimant was more than temporarily incapacitated and construing it to be so would be inconsistent with the clinical findings noted throughout the longitudinal medical treatment records. Further, a determination of disability is a finding reserved to the Commissioner, making the opinion of Dr. Tiruchelvam of no particular significance in assessing the claimant's case. (20 C.F.R. § 404.1527(e); Social Security Ruling 96-5p)." (Tr. 15-16) (emphasis added).

"The [ALJ] does not find the claimant to be entirely credible regarding the extent and severity of his physical impairments and limitations. The claimant's allegations have not been entirely consistent with the objective findings, in that the treatment received by the claimant relative to his physical impairments has been routine and conservative in nature. The medical treatment records indicate that the claimant suffers from degenerative disc disease of the lumbar spine and obesity. His treating physicians have directed him to lose weight and follow a proper diet, which he has failed to do. Further, the claimant is not always compliant with taking necessary medications, with some of those times due to periods of no insurance. The claimant alleges functional limitations because of his impairments; however, the claimant is able to perform some daily activities. The claimant reports that he is able to walk his dog, attend family sporting events and use the computer. The claimant is also capable of performing various household chores, as well as cooking and shopping." (Tr. 16) (emphasis added).

//

### b. Case Law and Analysis

Plaintiff contends the ALJ erred in failing to find diabetic neuropathy in Plaintiff's feet as a severe impairment. Pl. Br. at 5, Doc. 14. From this extensive review of the record, the ALJ throughly evaluated the hearing testimony; medical history; activities of daily living; opinion evidence; and credibility to determine Plaintiff's severe impairments.

The ALJ found there is no evidence in the medical treatment records that Plaintiff's diabetes mellitus has more than a minimal affect on his activities of daily living or on his ability to perform work. (Tr. 12). Moreover, the left foot ulceration / diabetic neuropathy did not affect his ability to work on a permanent basis. The ALJ noted that in the report from Dr. Granger, the examination showed Plaintiff's foot was completely healed. (Tr. 12). Even though it may have affected Plaintiff temporarily, the regulations require the ALJ to find that the disability is expected to last continuously for a year. To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). Thus, for an impairment to be considered severe, it must also meet the durational requirement.

After Plaintiff's foot ulcer was healed in March 2010, the only limitation noted in the medical records relating to his feet was advice from Dr. Chelliah that Plaintiff should wear protective footwear at all times (Tr. 372). During a September 2010 examination, Plaintiff could move his lower extremities equally and at full strength (5/5), and was observed to walk independently (Tr. 394). In November 2010, nurse practitioner Shelly Levenstein observed that Plaintiff could walk

without assistance (Tr. 386).

Plaintiff argues that the ALJ found there is no evidence of record establishing the existence of peripheral or sensory neuropathy but cited to an incorrect medical record. Pl. Br. at 6, Doc. 14; Tr. 12. Although the ALJ cited to an incorrect medical record, it appears there was minimal medical evidence specific to neuropathy in Plaintiff's feet.

The ALJ also found Plaintiff's daily activities inconsistent with the allegations of severe pain from neuropathy in his feet. (Tr. 14). The ALJ noted that Plaintiff probably was indeed unable to work temporarily due to the foot ulcer but not permanently. (Tr. 15-16). Finally, the ALJ found Plaintiff's treatment conservative and Plaintiff was able to perform various daily activities notwithstanding the allegations of disability.

It appears Plaintiff had symptoms of neuropathy (burning in his feet) since 2007, but worked more physically demanding jobs than what the ALJ limited him to up until the allegation of disability in September 2009 (Tr. 55, 82-86). According to Plaintiff, his disability onset date was prompted not by his neuropathy, but by his foot ulcer, which resolved within four-to-six months, and by his diabetes and back pain (Tr. 36, 43-45, 54).

Plaintiff contends the ALJ's failure to identify the diabetic neuropathy in Plaintiff's feet as a "severe" impairment affects the remaining analysis. Pl. Br. at 8, Doc. 14. However, even though the ALJ did not classify the diabetic neuropathy in Plaintiff's feet as "severe," he considered it in the remainder of the decision.

"[Plaintiff] contends that the ALJ erred in failing to determine whether his obesity was a "severe" impairment, and in failing to consider that impairment in assessing his residual functional capacity. As an initial matter, [Plaintiff] was not denied benefits at the second step of the sequential evaluation process. McCrea v. Commissioner of Social Security, 370 F.3d 357, 361 (3d Cir. 2004)

(remarking that "step two is to be rarely utilized as [a] basis for the denial of benefits"). Since the ALJ determined that [Plaintiff] had "severe" impairments, this case proceeded through the remaining steps of the process. The assessment of a claimant's residual functional capacity must account for both "severe" and "nonsevere" impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Where at least one impairment is found to be "severe" and the limitations resulting from the claimant's remaining impairments are properly considered, an error committed at the second step of the process with respect to one of those other impairments is inconsequential. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)." See McCleary v. Astrue, No. 10–1116, 2011 WL 4345892, at *9 (W.D. Pa. Sept. 15, 2011).

Similarly in this case, the ALJ found Plaintiff had other severe impairments, and the decision proceeded through the remaining steps in the disability process.

Even if the ALJ should have considered the diabetic neuropathy in Plaintiff's feet as a severe impairment, the error was harmless and would not have altered the result. The burden lies with Plaintiff to demonstrate harm from such error that would have changed the ALJ's decision, but he has not done so here. Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009); see also Molina v. Astrue, 674 F.3d 1104, 1111, 1115-22 (9th Cir. 2012). "No principle of administrative law 'requires that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision." Coy v. Astrue, No. 08-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

//

### 2.   ALJ Residual Functional Capacity Finding

Plaintiff contends the ALJ erred in finding Plaintiff's residual functional capacity by failing to include a limitation for the diabetic neuropathy in Plaintiff's feet; by discounting Plaintiff's credibility; by summarizing only some of Plaintiff's daily activities; by failing to consider Plaintiff's long work history as part of the credibility; by failing to find that Plaintiff was only able to perform sedentary work; by failing to find that Plaintiff was not able stand and walk for six hours out of an eight-hour day, as is required by light work; and by failing to specify the cumulative amount of time Plaintiff could stand, walk, and sit. Pl. Br. at 9-13, Doc. 14. The ALJ evaluated the record before determining Plaintiff's residual functional capacity.

### a. ALJ Findings with Regard to Residual Functional Capacity

"After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) in that the claimant is limited to frequently lifting and carrying no more than 10 pounds and occasionally lifting and carrying no more than 20 pounds. The claimant requires a position that would allow him to alternate sitting and stand option at will. The claimant is limited to occasionally bending, squatting, kneeling, climbing ramps or stairs." (Tr. 14).

"The combination of the claimant's severe physical impairments, as well as the non-severe physical impairments noted throughout the medical treatment records support the claimant's limitation to performing work at less than a full range of the light exertional level. The claimant's lumbar degenerative disc disease supports the limitation requiring the claimant to alternate sitting and standing at will. The claimant's lumbar degenerative disc disease and his obesity also support the claimant's limitation to occasionally bending, squatting, kneeling, climbing stairs and climbing ramps." (Tr. 16).

"In sum, the above residual functional capacity assessment is supported by the longitudinal medical treatment records." (Tr. 16).

### b. Case Law and Analysis

In limiting Plaintiff to a reduced range of light work with only occasional postural activity (bending, squatting, kneeling, and climbing ramps or stairs), and a sit / stand option, the RFC accounted for Plaintiff's credibly established limitations (Tr. 13-14). Moreover, no medical provider set forth limitations, other than wearing protective footwear, with regard to Plaintiff's feet, or his abilities to stand or walk (Tr. 372). Plaintiff had no limitations walking independently and had full strength in his legs as of examinations in September and November 2010 (Tr. 386, 394). Plaintiff admitted in the function report that he drove occasionally and walked his daughter's dog (Tr. 386, 394).

Plaintiff argues the ALJ did not enumerate every allegation of limitation Plaintiff made in the record, citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). Pl. Br. at 9-12, Doc. 14. However, Burnett merely requires that an ALJ consider and explain the reasons for discounting pertinent evidence in making the RFC determination. Burnett, 220 F.3d at 119.

The ALJ discussed the pertinent medical evidence, the allegations of limitation and pain, and the function report to conclude Plaintiff was "not entirely credible regarding the extent and severity of his physical impairments and limitations" (Tr. 14-16). The ALJ was not required to mention every allegation of limitation Plaintiff made in the record.

Plaintiff next argues that light work requires an individual to stand and / or walk for six hours in an eight hour workday and that, because Plaintiff was incapable of this, the RFC was not supported by substantial evidence (Pl. Br. at 10-11, 13). However, the ALJ accounted for Plaintiff's limitations by restricting him to a less-than-full range of light work, providing a sit / stand option and

only permitting occasional postural activities (Tr. 13-14). Thus, the ALJ did not mandate the full standing and walking requirements set out in the full range of light work when formulating Plaintiff's RFC.

Plaintiff argues the ALJ was required to identify how many hours per day Plaintiff could sit, stand, or walk. The ALJ set forth a limitation that Plaintiff could sit or stand at his option at work, and the VE testified that jobs existed in the economy that satisfied this limitation (Tr. 14-15, 86-88). There is no requirement that the ALJ further specify the exact time Plaintiff could sit, stand, or walk. Moreover, Plaintiff's argument that the ALJ should have found Plaintiff's complaints credible in light of his work history falls short (Pl. Br. at 12-13). "[A]n ALJ is not required to equate a long work history with credibility." Baughman v. Astrue, No. 08-850, 2009 WL 2634193, at *4 (W.D. Pa. Aug. 26, 2009). See also Corley v. Barnhart, 102 F. App'x 752, 755 (3d Cir. 2004) (denying remand for ALJ's failure to comment on claimant's work history, explaining that in remanded cases "the claimant not only had a long and productive work history, but also showed evidence of severe impairments or attempted to return to work, and neither of these circumstances exist here"). Past work history is but one factor that may be used in analyzing a Plaintiff's credibility. Lee v. Astrue, No 12-782, 2012 WL 4932041 (E.D. Pa. Oct. 17, 2012) (finding that work history is only one of many factors to be considered when assessing subjective complaints).

Although Plaintiff was diagnosed with neuropathy and loss of sensation in his feet, physical examinations revealed that he could walk independently, and stand without issue (Tr. 335-36, 375, 386, 394). To the extent neuropathy did limit these abilities (per his testimony), the ALJ accounted for such limitations in restricting Plaintiff to a limited range of light work, with only occasional postural activity, and a sit / stand option. Moreover, Plaintiff's function report belied his testimony with regard to his abilities to walk and drive, noting that he drove occasionally and walked his

daughter's dog (Tr. 229-31).

Plaintiff states he testified he did not drive a car because of the inability to feel the pedals due to numbness in his feet, that he could not examine his feet or care for his toenails as recommended by his doctors because he could not bend, and that he spent most of his day sitting or lying down and watching television. Pl. Br. at 11, Doc. 14; Tr. 64. Again, the ALJ cannot find disability based on temporary / intermittent symptoms that existed at the time of the ALJ hearing. The regulations require the ALJ to find that his disability is expected to last continuously for a year. To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A) (emphasis added).

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996). In particular, an ALJ should consider the following factors: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of the plaintiff's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication for relief of the symptoms; (6) any measures the plaintiff uses or has used to relieve the symptoms; (7) the plaintiff's prior work record; and (8) the plaintiff's demeanor during the hearing. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Jury v. Colvin, No. 3:12-cv-2002, 2014 WL 1028439 (M.D. Pa. Mar. 14, 2014). When the Court reviews  the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ

is charged with the duty of observing a witness's demeanor and credibility." <u>Walters v.</u> <u>Commissioner of Soc. Sec.</u>, 127 F.3d 525, 531 (6th Cir.1997) (citing <u>Casias v. Secretary of Health</u> <u>& Human Servs.</u>, 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); <u>Plummer</u>, 186 F.3d at 429. If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. <u>Id.</u> The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. <u>Id.</u> Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. <u>Id.</u> The Commissioner is not bound by a treating physician's opinion, and may reject it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. <u>Lyons-Timmons v. Barnhart</u>, 147 F. App'x 313, 316 (3d Cir. 2005).

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); <u>Chandler v. Comm'r of Soc. Sec.</u>,

667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler, 667 F.3d 356 at 361. In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981). Mistick v. Colvin, No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

In Chandler v. Comm'r of Soc. Sec., 667 F.3d at 362, the Third Circuit held that the district court had erred in concluding that the "ALJ had reached its decision based on its own improper lay opinion regarding medical evidence." Id. "The ALJ– not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Id. at 361 (citing 20 C.F.R. 404.1527(e)(1), 404.1546(c)).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence

properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter, 642 F.2d at 705. Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all impairments alleged by claimant, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005). Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual functional capacity, and the findings are supported by substantial evidence.

### 3. The ALJ's Application of Grid Rule 202.14

Plaintiff next argues the ALJ erred in improperly applying Medical-Vocational Guidelines (Grid) Rule 202.14 as a framework to find Plaintiff not disabled. Plaintiff contends the residual functional capacity determination fell between the exertional levels for light and sedentary work, and the ALJ should have applied Grid Rule 201.14 to find Plaintiff disabled. Pl. Br. at 15, Doc. 14.

However, since substantial evidence supports the ALJ's finding that Plaintiff could perform a limited range of light work with a sit / stand option, Grid Rule 201.14, would not apply as its only applicable where an individual is limited to sedentary work.

Moreover, the Grid rules are not relevant because the ALJ found Plaintiff could not perform the full range of light work. (Tr. 17). 20 C.F.R. Pt. 404, Subpt. P., App. 2 § 202.00. Thus, the ALJ employed a VE to determine the extent to which the Plaintiff's functional limitations eroded the occupational base (Tr. 17). The VE determined that an individual with the Plaintiff's age, education, work experience, and RFC could still perform work existing in significant numbers in the national economy and, thus, the ALJ found that Plaintiff was not disabled (Tr. 86-88).

Plaintiff argues the ALJ needed to more explicitly set out sitting and standing limitations to determine whether Plaintiff's functional abilities were more akin to light work versus sedentary work (Pl. Br. at 15-17). However, SSR 83-12 advises an ALJ to consult a VE where an individual cannot perform a full range of one of the ranges of work set out in the regulations (sedentary, light, medium, heavy, or very heavy). SSR 83-12, 1983 WL 31523 at 2-3; see also 20 C.F.R. §§ 404.1566(e),

416.966(e) (providing that an ALJ may use the services of a vocational expert when there are complex issues involved in determining whether a claimant is disabled). The ALJ used the VE testimony to determine that work existed in significant numbers in the national economy that Plaintiff could perform, with the sit / stand limitations (Tr. 17-18, 86-88).

## V.    Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190.

Accordingly, it is HEREBY RECOMMENDED:

1.    This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

2.    The Clerk of Court shall CLOSE the case.

The parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion

or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: August 11, 2014

s/Gerald B. Cohn
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE